UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY RABANUS,

    Plaintiff,

v.

                                        Case No. 11-10583-DT

BANK OF AMERICA, N.A.,             HONORABLE DENISE PAGE HOOD

    Defendant.

_____/

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

**I.    BACKGROUND/FACTS**

Plaintiff Jeffrey Rabanus ("Rabanus") filed the instant action against Defendant Bank of America Corporation ("BOA") on February 11, 2011. The Complaint alleges a one-count claim of Violation of the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 *et seq*.

BOA acquired LaSalle Bank in late 2007. While at LaSalle, Rabanus was a Division Manager, responsible for supervising Bank Managers in sales, operations and service provided at 13 LaSalle Banking Centers in the Flint, Michigan area. Upon acquisition, BOA offered Rabanus a position as a Consumer Market Manager ("CMM") in the Northeast Michigan Market, which had similar, but not identical duties as those as a Division Manager with LaSalle Bank.

In May 2009, Rabanus took the position as a Banking Center Manager ("BCM") for BOA. Rabanus requested leave in February 2010 under the FMLA for the upcoming birth of his child. The FMLA leave was approved beginning on the date of the birth of the child. Rabanus' child was born on April 2, 2010.

Prior to the FMLA leave request, Rabanus had been evaluated as meeting or exceeding

expectations. Rabanus asserts that although he feared his supervisor, Leonard Gardner, a Consumer Market Executive ("CME") would retaliate for requesting FMLA leave, Rabanus decided to place his family first. Rabanus claims that Gardner previously retaliated against another BCM, Jodi Beecher, for taking FMLA leave during her pregnancy in 2008.

In preparation for the leave, Rabanus drafted two "Cat's Away Plans" designed to assist his team in operating the branch in his absence, upon Gardner's recommendation. Rabanus emailed the first plan to Gardner, Erica H. Tyree, a Consumer Market Manager ("CMM") and the rest of his market team twelve days before his leave. No one in management advised Rabanus that his "Cat's Away Plan" was faulty before or during his leave. Rabanus modified the plan in response to an audit plan and sent the modified plan while on leave.

On March 2, 2010, Rabanus claims that a "surprise" physical audit of the branch was conducted. Rabanus claims that prior to this audit, the audits performed were "virtual." Deficiencies were identified and on March 4, 2010, Rabanus completed a BCCR Action Plan which identified correction steps. Rabanus provided the plan to Gardner and Tyree, as required by BOA accountability policy. The policy provides that Gardner or Tyree were to give feed back on the action plan within three days, but neither Gardner nor Tyree did so. Rabanus had to call for feed back from Manager Emery. Gardner did not provide any feedback and Tyree's feedback was 19 days late. Rabanus reviewed the action plan after Tyree's feedback. Rabanus was given a written warning on March 26, 2010 for the failed audit. The minimum time to cure warning deficiencies is thirty days. Rabanus' wife gave birth on April 2. On March 30, 2010, Tyree emailed Rabanus compliments on the wonderful job he was doing at the branch.

On June 23, 2010, two days before Rabanus returned from his FMLA leave, Tyree and

Gardner prepared a Final Written Warning ("FWW") to give to Rabanus upon his return. The FWW mentions the March written warning regarding the audit deficiencies, but does not criticize Rabanus for the audit deficiencies. The FWW noted failures by Rabanus' staff while he was on leave. Rabanus returned to work on June 25, 2010 at which time he was given the FWW. The FWW is the final step before termination in BOA's disciplinary system. Tyree told Rabanus that the FWW was based on events that occurred at his branch while he was on FMLA leave. Although Tyree could not identify any infraction by Rabanus while on leave, Tyree indicated that Rabanus was being held accountable for his staff's mistakes while he was on leave.

Rabanus claims that when he returned from leave, Tyree and Gardner pounced on him. Gardner indicated to Tyree that Gardner had hoped Tyree had quit because Gardner had obtained authority to fill his position and that Gardner had posted his position. On June 25, 2010, fearing termination, Rabanus appealed the FWW immediately to the BOA Human Resources group known as "Advice and Counsel" ("A&C"). A&C indicated that Rabanus' claim would be investigated. Rabanus spoke with Glenna Gates, another BCM, who told Rabanus that she was surprised that Rabanus was back to work because she had seen his job posted.

On July 14, 2010, A&C informed Rabanus that it supported the FWW. Sherri Ann Madrid, a representative of the A&C, indicated that she found Rabanus was held accountable for things he failed to put in place before he went on leave which she asserted did not violate the FMLA. However, Madrid indicated she never saw the "Cat's Away Plan" submitted by Rabanus. Brenda Emery, a CMM on Rabanus' team, had told Rabanus that Gardner was going to fire him after A&C denied his appeal. On July 15, 2010, Gardner confirmed via email to Gardner's supervisors that Rabanus was going to be discharged, but was waiting a short while following a recommendation

3

by the A&C to wait for a week and a half because Rabanus was a ten year associate and might accuse BOA of wrongful discharge. Once Gardner decided to fire Rabanus, Tyree met with Rabanus on July 18, 2010, bombarding Rabanus with additional complaints about deficiencies of his subordinates while Rabanus was on leave.

Concerned about possible discharge, Rabanus called a friend employed as a BOA recruiter and asked her about his prospects for future employment if it would be better if Rabanus resigned or discharged. The friend indicated to Rabanus that it would look better for future job prospects if Rabanus resigned instead of being discharged. Rabanus indicates that the working conditions at BOA became intolerable and that if he waited to be fired his blemished record would prevent him from finding employment to support his family. Rabanus resigned on July 19, 2010. The instant suit ensued.

## II.  ANALYSIS

### A.  Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Celotex Corp.*, 477 U.S. at 322-23.  A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

  **B.** **FMLA**

    **1.** **McDonnell Douglas Burden Shifting**

  The FMLA permits eligible employees to take up to twelve weeks of unpaid leave during any 12-month period for family or medical reasons.  29 U.S.C. § 2612. The FMLA "prohibits employers from taking adverse employment actions against employees based on the employee's exercise of FMLA leave."  28 U.S.C. § 2612(a)(1); *Bryant v. Dollar General Corp.,* 528 F.3d 394, 501 (6th Cir. 2008).  The burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972) is applicable under the FMLA.  *Stubl v. T.A. Systems, Inc.*, 984 F.Supp. 1075 (E.D. Mich. 1997).  Where a plaintiff lacks direct evidence of the employer's discriminatory intent, the plaintiff must first establish a *prima facie* case of adverse employment action based on a protected characteristic; then, the employer must produce a non-discriminatory reason for the action, which the plaintiff must attack by demonstrating it is pretextual under the *McDonnell Douglas* burden shifting analysis.  *Stubl*, 984 F.Supp. at 1090-1091.  Courts have applied the *prima facie* requirements under Title VII and the ADA.  A plaintiff must establish a *prima facie*

5

case under the FMLA:

> 1) engaged in an activity protected by the FMLA;
> 2) that the exercise of his/her protected rights was known to defendant;
> 3) that defendant thereafter took an employment action adverse to the plaintiff; and
> 4) that there was a causal connection between the protected activity and the adverse employment action.

*Id.* at 1090, *citing Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). Once the plaintiff proves a *prima facie* case, the burden shifts to the employer to "articulate some legitimate non-discriminatory reason for the employee's discharge." *Stubl*, 984 F.Supp. at 1091. Once the employer meets the burden of articulation, the burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the reason proffered was a mere pretext. *Id.*

For purposes of the motion, BOA concedes the first two elements–that Rabanus was engaged in an activity protected by the FMLA and that the defendant knew Rabanus was exercising his rights under the FMLA. BOA argues that Rabanus cannot establish that he was the victim of an adverse employment action since the FWW issued in June 2010 and Rabanus' resignation in July 2010 do not constitute adverse actions by BOA. Rabanus argues that both the FWW and his resignation are adverse actions by BOA.

### 2. Adverse Actions

#### a. June 2010 FWW

Adverse employment action must typically constitute a materially adverse change in the terms of employment. *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 885-86 (6th Cir. 1996). Examples of adverse actions include demotions, reductions in salary or job responsibilities, offers of early retirement or continued employment on terms less favorable than the employee's former status, and harassment by the employer calculated to encourage the employee's resignation. *Logan*

*v. Denny's Inc.,* 259 F.3d 558, 569 (6th Cir. 2001). Rabanus claims that the June 2010 FWW uses the FMLA as a negative factor in issuing discipline which is sufficient to establish adverse action, citing *Weigold v. ABC Appliance, Co.,* 105 Fed. Appx. 702 (6th Cir. 2004)(unpublished) and *Bachelder v. America West Airlines,* 259 F.3d 1112, 1125-26 (9th Cir. 2001), which was cited in the Sixth Circuit case of *Bryant*, *supra.* BOA claims that these two cases do not support Rabanus' position.

In *Weigold*, the Sixth Circuit noted that a formal reprimand may constitute adverse employment action but, absent that it is "anything more than a mere criticism," a verbal reprimand does not. *Weigold,* 105 Fed. Appx. at 708. The *Weigold* court did not expressly note that a "written" reprimand constitutes an adverse employment action. A review of the July 2010 FWW appears to show a general criticism of Rabanus' failure to meet expectations. However, Rabanus has indicated that the FWW is the final step before termination. Rabanus also submitted evidence by way of Gardner's email that Rabanus was going to be discharged after the A&C's denial of the appeal. There was nothing else for Rabanus to do following the FWW in order for Rabanus to keep his job. Rabanus has presented sufficient evidence to create a genuine issue of material fact that the FWW was the last step prior to his termination by BOA.

In addition, the FWW refers to matters while Rabanus was on leave. (Ex. 1, Resp. Br.) The statement that "Jeff did not set his team up for success while out on leave" refers to matters which occurred while Rabanus was on leave. As noted in the *Bachelder* case cited by Rabanus,

> [A]ttaching negative consequences to the exercise of protected rights surely 'tends to chill' an employee's willingness to exercise those rights: Employees are, understandably, less likely to exercise their FMLA leave rights if they can expert to be fired or otherwise disciplined for doing so. The Labor Department's conclusion that employer use of "the taking of FMLA leave as a negative factor in

7

> employment actions," 29 C.F.R. § 825.220(c), violates the Act is therefore a reasonable one.

*Bachelder,* 259 F.3d at 1124. The statement on the FWW could be inferred as a criticism of Rabanus that he took leave and as a result of the leave, which he was entitled to under the FMLA, he was disciplined for matters that occurred while Rabanus was on leave. The eventual decision to terminate Rabanus, as noted by Gardner in his email to his supervisors, which was sent prior to Rabanus resigning from the position, the termination was based on the FWW, which referred to Rabanus' leave. (Ex. 14, Resp. Br.) The FWW could constitute an adverse employment action, given that there was no opportunity thereafter for Rabanus to keep his job and in light of Gardner's email indicating Rabanus would be terminated before the end of July 2010.

### b. Constructive Discharge

Under Sixth Circuit precedent, "a constructive discharge exists if working conditions are such that a reasonable person in the plaintiff's shoes would feel compelled to resign." *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1127 (6th Cir.1998) (internal quotation marks and citation omitted). In determining whether such working conditions were present, the court must assess the circumstances "objectively," and "without consideration of [the employee's] undue sensitivities." *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir.1991). Plaintiff also must produce evidence from which the trier of fact could conclude that the defendant deliberately created these intolerable working conditions "with the intention of forcing [her] to quit." *Moore v. KUKA Welding Systems*, 171 F.3d 1073, 1080 (6th Cir.1999). In *Saroli v. Automation & Modular Components, Inc.,* 405 F.3d 446 (6th Cir.2005), the Sixth Circuit found that the plaintiff raised a genuine issue of material fact as to whether she was constructively discharged from her employment, based on the employer's words and actions which made clear to the plaintiff that if she

did not resign, she would be demoted. *Id.* at 450-51.

Rabanus has submitted sufficient facts to create a genuine issue of material fact that if he did not voluntarily resign, he would be fired. Rabanus testified that as soon as he returned from his leave, Gardner indicated to him that he should have quit because Gardner had received authority to fill his position and that Gardner's position had been posted. (Ex. 12, Resp., Rabanus Dep., pp. 174, 230-31). Rabanus also spoke with Gates who indicated she saw Rabanus' job posted before returning from leave. (Ex. 13, Resp., Gates Dep., pp. 10, 12-13). Rabanus' testimony that his meeting with Tyree on July 18, the day before Rabanus tendered his resignation on July 19, where Tyree bombarded Rabanus with complaints about deficiencies of his subordinates while Rabanus was on leave, creates a genuine issue of material fact that his workplace was intolerable and that he feared he was facing eventual termination. (Ex. 12, Resp., Rabanus Dep., pp. 184-86) As noted above, Gardner's email to his supervisor after the A&C's decision denying Rabanus' appeal, shows that Rabanus would have been fired before the end of July 2010. Ex. 14, Resp., Rabanus Dep.)

Considering the totality of the circumstances and viewing the light most favorable to the non-moving party, the Court finds that Rabanus has presented sufficient evidence to show he may have been constructively discharged. Rabanus has presented sufficient evidence to preclude summary judgment that the June 2010 FWW and the July 2010 resignation constitute adverse actions by BOA.

### 3. **Causal Connection**

BOA argues that because the problems that Rabanus did not properly train his staff were discovered while Rabanus was on leave, this does not show causal connection that the actions by BOA was in retaliation for Rabanus taking the leave. In response, Rabanus argues that if this was the case, other supervisors, acting in Rabanus stead while on leave, should also have been

9

disciplined and were not.

The Court finds Rabanus has submitted sufficient evidence to show a causal connection that his termination was a result of exercising his right to an FMLA leave. Tyree indicated to him that he was still responsible for actions while Rabanus was on leave. However, neither Tyree nor Gardner criticized Rabanus' "Cat's Away Plans" he submitted prior to taking leave. Tyree sent Rabanus emails praising his performance after the March 2010 audit, which occurred prior to Rabanus taking his leave in April 2010. The FWW was drafted while Tyree was on leave. Many of the negative comments in connection with the FWW were because of actions by Rabanus' employees while he was on leave, which could be inferred that taking such a leave had a negative effect on Rabanus' employee status with BOA. Viewing the light most favorable to Rabanus, he has submitted sufficient evidence to show a causal connection that his termination was a result of taking the FMLA leave.

### 4. Legitimate, Non-Discriminatory Reason/Pretext

BOA argues that even if Rabanus were able to establish a *prima facie* case, BOA's actions were taken for legitimate, nondiscriminatory reasons that Rabanus cannot establish were a pretext for FMLA retaliation. BOA argues that Rabanus was issued discipline and counseled by BOA management because of his failure to properly train his employees and comply with BOA operational guidelines. Rabanus responds that this is pretext to BOA's motivation.

There is sufficient evidence submitted by Rabanus to show that BOA's reason is mere pretext. As noted above, Rabanus submitted a "Cat's Away Plans" before he left for his leave. Rabanus redrafted the plan after input from Tyree. Tyree, on March 30, 2010, emailed Rabanus indicated he did a great job on the audit. Any reference by BOA as to the audit would show pretext,

in light of Tyree's email. All the actions referred to the in the FWW were those taken by Rabanus' employees while he was on leave. Nothing in the FWW criticizes Rabanus' actions from the March 2010 physical audit. BOA's reason that Rabanus was "counseled" for his failure to properly train the employees can be seen as pretext, given that the FWW was issued in June 25, 2010, as soon as he returned from leave. Gardner indicated to his supervisors on July 15, 2010 that Rabanus would be fired shortly after the A&C issued its decision, less than a month from Rabanus' return from leave. There was no opportunity for Rabanus to correct his mistakes, given that the FWW was the final step prior to termination and the decision to terminate was already made.

### 5.    Direct Evidence

Rabanus claims he has presented direct evidence of discrimination under the FMLA. BOA claims that Rabanus has failed to establish such evidence.

Alternatively, an employee can show direct evidence of discrimination under the FMLA. A plaintiff proceeding on a direct evidence theory must point to allegations that "'require the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999). But that merely requires that the plaintiff show that "the defendant's discriminatory animus was more likely than not a 'substantial' or 'motivating' factor in the decision," or that defendant's "discriminatory animus was causally related to the adverse decision." *Id.* at 193. The "requires the conclusion" standard does not imply that every allegation and every piece of evidence pertain directly to the adverse actions taken against the plaintiff. A direct evidence claim may be supported by more generalized evidence, so long as the evidence when taken as a whole requires the conclusion that the defendant's discriminatory animus was a motivating factor in the adverse

employment action. *Talley v. Bravo Pitino Restaurant, Inc.*, 61 F.3d 1241, 1249 (6th Cir.1995). As the Sixth Circuit has noted, "[d]iscriminatory statements may reflect a cumulative managerial attitude among the defendant-employer's managers that has influenced the decisionmaking process for a considerable time. Thus, management's consideration of an impermissible factor in one context may support the inference that the impermissible factor entered into the decisionmaking process in another context." *Ercegovich v. Goodyear Tire and Rubber Co.,* 154 F.3d 344, 356 (6th Cir.1998); *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 381-82 (6th Cir. Jul. 2002). "It is well settled that if a plaintiff presents direct evidence of discrimination, [he] need not proceed under the *McDonnell Douglas* formula." *Weigel,* 302 F.3d at 831-82.

The evidence noted above shows that the June 23, 2010 FWW notes Rabanus' failure to set his team up for success while out on leave. (Ex. 1, Resp.) This FWW links the FWW to Rabanus' action or inaction while he was on leave. Rabanus was told by Tyree and Gardner that even though he was on leave, he was still responsible for the actions in his branch. Rabanus testified that when he asked Tyree how he could be held responsible for his staff's action while he was on leave, Tyree told Rabanus that, "Jeff we can do this because you work for Bank of America." (Ex. 2, Resp., Rabanus Dep., pp. 173-74) This statement could reflect a cumulative managerial attitude among BOA's managers that have influenced their decisionmaking or attitude as to employees seeking leave under the FMLA. Tyree herself testified that Rabanus was responsible for the banking center while on leave. (Ex. 7, Resp., Tyree Dep., p. 32)

Rabanus has shown sufficient evidence to survive summary judgment on the direct evidence claim linking the FWW to his termination. BOA's Motion for Summary Judgment based on the direct evidence claim is denied.

### III.     CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion for Summary Judgment **(Doc. No. 22, filed January 17, 2012)** is DENIED.

IT IS FURTHER ORDERED that a Final Pretrial Conference is set for **Monday, June 11, 2012, 2:30 p.m.**  The proposed Joint Final Pretrial Order required under E.D. Mich. LR 16.2 must be submitted by June 4, 2012.  All parties with authority to settle must appear.  A trial date will be set at the conference.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  May 10, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 10, 2012, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager